# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 11-cv-00689-CMA-BNB

NOVA LEASING, LLC, a Wyoming limited liability company,

      Plaintiff,

v.

SUN RIVER ENERGY, INC., a Colorado corporation,
MOUNTAIN SHARE TRANSFER, INC., a Colorado corporation
HARRY N. McMILLAN,
CICERONE CORPORATE DEVELOPMENT, a Texas limited liability company, and
J.H. BRECH, LLC, a Texas limited liability company,

      Defendants.

---

## ORDER DENYING MOTIONS TO DISMISS

---

      This stockholder action was brought by Plaintiff, Nova Leasing, LLC ("Nova"), against Sun River Energy, Inc. ("Sun River"), Mountain Share Transfer, Inc. ("Mountain Share"), Harry N. McMillan ("McMillan"), Cicerone Corporate Development ("Cicerone"), and J.H. Brech, LLC ("Brech"). Before the Court are (1) Sun River's Motion to Dismiss Nova's Second Amended Complaint (Doc. # 56); and (2) Sun River's Motion to Dismiss Mountain Share's Cross-Claim (Doc. # 40).[1] For the reasons discussed below, the Court denies both motions.[2]

---

[1] The partial motions to dismiss—at Docs. ## 71, 76, and 77—filed by McMillan, Brech, and Cicerone, respectively, will be decided by the Court in a subsequent order.

[2] As explained below, Nova has validly stated a claim under federal law. As such, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction over state-law claims).

# I. BACKGROUND

## A. FACTUAL ALLEGATIONS[3]

Nova is in the business of acquiring oil, gas, and other mineral leases for sale to companies like Sun River, whose primary business is to develop the properties underlying such leases. (Doc. # 54 at 5.) Between April 12, 2006, and April 21, 2008, Sun River, Nova, and Sharon K. Fowler, who is the wife of Nova's manager and principal owner, Bob Fowler, entered into five transactions:

1. An April 12, 2006 Asset Purchase Agreement, entailing a sale of oil and gas lease interests covering roughly 640 acres to Sun River in exchange for both a transfer of 300,000 shares of Sun River stock and a $64,000 promissory note ("$64,000 Note") made payable to Nova.

2. An April 25, 2006 Asset Purchase Agreement, encompassing a sale of oil and gas lease interests on approximately 3,200 acres to Sun River in exchange for both a transfer of 400,000 shares of Sun River stock and a $150,000 promissory note made payable to Sharon K. Fowler.

3. A July 17, 2006 Promissory Note Extension agreement, under which Nova agreed to extend the maturity of the $64,000 Note from July 17, 2006, to January 31, 2007, in exchange for a transfer of 20,000 shares of Sun River stock to Nova.

4. A September 25, 2006 Asset Purchase Agreement, entailing a sale of oil and gas lease interests covering an estimated 14,000 acres to Sun River in exchange for both a $6,600,000 promissory note ("$6,600,000 Note")

---

[3] The following well-pled factual allegations are adopted from Nova's Second Amended Complaint. (Doc. # 54.) As it must, and as discussed below, the Court accepts them as true.

made payable to Nova and a transfer of 880,000 shares of Sun River

stock to Nova, who agreed that such shares would be non-refundable and

*would carry registration rights.*

5.  An April 21, 2008 Note Release agreement, stemming from Sun River's

2007 default on the $64,000 Note and the $6,600,000 Note.  Under the

agreement, Nova released Sun River from further payments on the notes,

"including past due principal and interest accrued[,]" in exchange for Sun

River conveying back to Nova the oil and gas lease interests entailed in

the September 25, 2006 Asset Purchase Agreement.

(*Id.* at 5-8.)  As a result of these transactions, and as of December 31, 2006,

Nova owned 1,200,000 shares, and Sharon K. Fowler owned 400,000 shares, of

Sun River stock.  (*Id.* at 8.)  In its periodic Securities and Exchange Commission

("SEC") filings for the fiscal years ending April 30, 2008, and April 30, 2009, Sun

River reported that Nova was a shareholder "known by the Company [Sun River]

to own beneficially 5% or more of the outstanding shares of Common Stock." (*Id.*

at 9; Doc. # 54-1 at 28; Doc. # 54-2 at 30.)  Sun River did not "report that it was

beneficial owner of the 1,200,000 shares issued to Nova, that it was asserting a

claim of ownership of such shares[,] or that it was lacking documentation to

confirm the validity of Nova's ownership of the shares." (Doc. # 54 at 9.)

Nova's 1,200,000 Sun River shares, as well as Sharon K. Fowler's

400,000 shares, initially were restricted under SEC Rule 144.[4]  (*Id.*)  Accordingly,

Sun River had its transfer agent, Mountain Share, "issue stock certificates to

---

[4] 17 C.F.R. § 230.144; *see Jennings v. General Med. Corp.*, 604 F.2d 1300, 1302 n.3
(10th Cir. 1979) ("Rule 144 governs resale of restricted securities, and resale of certain
unrestricted securities.").

Nova and Sharon K. Fowler bearing a restrictive legend." (*Id.*)  On March 19, 2009, after Nova's and Sharon K. Fowler's shares became eligible for transfer or sale under Rule 144, Sun River issued them new, unrestricted certificates and directed Mountain Share to register Nova's shares. (*Id.* at 9-10.)  After this transaction, "and for each of its fiscal years in 2008, 2009[,] and 2010, Sun River continued to deliver to Nova notices of annual meetings, proxy materials and other shareholder materials by which it recognized Nova's continued ownership of the 1,200,000 shares previously issued." (*Id.* at 10.)  Sharon K. Fowler sold "certain of her unrestricted Sun River shares in the open market" in 2009 and 2010. (*Id.*)

On approximately April 1, 2010, McMillan, as a consultant to Sun River, contacted Bob Fowler "to demand that Nova and Sharon K. Fowler enter into a 'Lock-Up Agreement[,]'" under which "McMillan and Sun River proposed that Nova and Sharon K. Fowler agree not to sell any Sun River shares without prior consent of the company for a period of six (6) months." (*Id.* at 10-11.)  However, Nova and Sharon K. Fowler "declined Sun River's and McMillan's demand . . . ." (*Id.* at 12.)

Nova alleges that, "[a]t the time of Sun River's and McMillan's April 1, 2010 demand, and thereafter[,] . . . Sun River's management stood to gain financially with respect to [its] ownership and control of Sun River stock by obstructing, preventing[,] or delaying stock sales by Nova, Sharon K. Fowler[,] and other shareholders." (*Id.*)  According to Nova, these actions would: "(a) artificially inflate the price of Sun River's shares; and (b) prevent dilution of

the ownership and control interests of . . . Sun River management in Sun River."
(*Id.*) "Such dilution would result if Sun River was forced by a depression in the
market price, through sales by Nova, Sharon K. Fowler[,] or other Sun River
shareholders, to increase the amount of shares issued to new investors." (*Id.*)

On September 13, 2011, McMillan contacted Bob Fowler again, "repeating
his demand that neither Nova [n]or Sharon K. Fowler sell or transfer their Sun
River shares without his or Sun River's prior consent." (*Id.*) "This time, however,
McMillan threatened to physically confront Mr. Fowler if he didn't immediately 'get
out of the market.'" (*Id.*) "McMillan further threatened that he would personally
obstruct any attempt by Nova or Sharon K. Fowler to 'clear' their shares for sale
'for the next two or three years' if Nova or Sharon K. Fowler attempted to sell Sun
River shares . . . ." (*Id.* at 12-13.) Voicemails left by McMillan for Bob Fowler
include statements such as: "I just found out you're one of [the] largest . . . sellers
*of Sun River stock. After I told you not to be in the market* . . ."; "if you try to clear
some security to get free trading after this whole block share selling, trust me
they will not clear"; and "I will fight you for the next two or three years." (*Id.* at
13.) Again, however, Nova and Sharon K. Fowler declined to refrain from selling
their Sun River shares. (*Id.*)

To sell their shares, Nova and Sharon K. Fowler separately deposited their
unrestricted certificates with their securities broker, Alpine Securities Corporation
("Alpine"). (*Id.*) Sharon K. Fowler deposited certificates representing 100,000
Sun River shares with Alpine on November 1, 2010, and Nova deposited its
certificates, representing 1,200,000 Sun River shares, with Alpine on January 18,

2011. (*Id.*) Nova and Sharon K. Fowler requested that Alpine register their respective certificates "in 'street name,' meaning that Alpine was to obtain registration of the certificates in its name or that of its custodian or other nominee with Nova and Sharon K. Fowler as beneficial owners."[5] (*Id.* at 14.) "Such registration was necessary for Alpine, as broker, to sell Nova's and Sharon K. Fowler's Sun River shares on the open market." (*Id.*) Alpine, through a nominee, presented Mountain Share with the Sun River stock certificates and a request for registration of transfer. (*Id.*)

On November 16, 2010, after Sharon K. Fowler's transfer request was presented to Mountain Share, Sun River instructed Mountain Share "not to register a transfer of any of the 100,000 shares . . . ." (*Id.*) "Sun River further instructed Mountain Share to place a 'stop/hold' on any such transfer until it could complete an 'investigation' of Mrs. Fowler's request." (*Id.*; Doc. # 54-5.) Nova and Sharon K. Fowler then requested that Alpine, through its brokerage representative, contact Sun River to determine why Sharon K. Fowler's shares had not been cleared for sale. (Doc. # 54 at 15.) The representative spoke with James Pennington, outside (and later general) counsel for Sun River. (*Id.*) Pennington told the representative that "Sun River could not approve Mrs. Fowler's request because Sun River was 'missing documentation' necessary to approve the transfer." (*Id.*) Nova alleges that Sun River knew such statement, through Pennington, was substantially false and misleading because:

---

[5] Registering stock in street name "permit[s] beneficial owners easily and quickly to transfer ownership of their shares without meeting the issuer's often cumbersome requirements . . . ." *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 940 (10th Cir. 2005).

> (a) Sun River had all such documentation in paper or electronic form; (b) Sun River had previously determined that it had all necessary documentation in order to issue the new, unrestricted certificates to Mrs. Fowler on March 19, 2009; and (c) Sun River had publicly filed such documentation with the SEC on or about May 3, 2006 through its Form 8-K.

(*Id.*) Nova also alleges that Sun River knew its statement associated with completing an "investigation" of Sharon K. Fowler's request was false and misleading because:

> (a) such 'investigation' was mere pretext for implementation of Sun River's and McMillan's threat on September 13, 2010; (b) no such 'investigation' was necessary since Sun River had all documentation necessary to approve the transfer request by Sharon K. Fowler, as evidenced by Sun River's issuance of new, unrestricted certificates to Mrs. Fowler on approximately March 19, 2009.

(*Id.* at 15-16.)

Similarly, on January 31, 2011, after Nova's transfer request was presented to Mountain Share, Sun River instructed Mountain Share "not to register a transfer of any of the 1,200,000 shares of Sun River stock owned by Nova." (*Id.* at 16.) "Sun River further instructed [Mountain Share] to place a 'stop/hold' on any such transfer because such transfer was not 'rightful.'" (*Id.*; Doc. # 54-6.) Alpine's brokerage representative contacted Sun River and again spoke to Pennington about why Nova's Sun River shares had not been cleared for transfer. (Doc. # 54 at 16.) As he had said previously, Pennington informed the representative "that Sun River could not approve Nova's request because it was 'missing documentation' needed." (*Id.*) Nova alleges that Sun River knew such statement, through Pennington, was substantially false and misleading because:

> (a) Sun River had all such documentation in paper or electronic
> form; (b) Sun River had previously determined that it had all
> *necessary documentation in order to issue new, unrestricted*
> certificates to Nova on March 19, 2009; (c) Sun River had publicly
> filed such documentation with the SEC on or about May 3, 2006,
> October 13, 2006[,] and November 21, 2006 through its Form 8-K's;
> and (d) the only documentation that Sun River could identify as
> *'missing' and needed to approve Nova's transfer request for its*
> 1,200,000 shares was a written assignment of the oil and gas
> leases conveyed by Nova to Sun River as part of the September
> 25, 2006 Assignment.[6]

(*Id.* at 16-17.)

After receiving from Mountain Share a copy of Sun River's January 31,

2011 stop/hold instruction, Nova "again asked Sun River by letter dated February

28, 2011 to state why Nova's shares had not been approved for transfer as

requested." (*Id.* at 17.)  Sun River, through McMillan and Pennington, verbally

responded on approximately March 1, 2011, "stating that Sun River could not

approve Nova's transfer request because Mr. Fowler, at the time of the April 21,

2008 Note Release, had stated that Nova 'did not wish to keep' any of the

1,200,000 Sun River shares previously issued and had agreed to re-convey such

shares to Sun River." (*Id.*)  Nova alleges that Sun River knew this statement to

be substantially false and misleading because:

> Sun River and McMillan, who negotiated the April 21, 2008 Note
> Release on behalf of Sun River, expressly and continually affirmed
> Nova's ownership of all 1,200,000 shares after the April 21, 2008
> Note Release, through; (a) the issuance of new, unrestricted
> certificates to Nova on March 19, 2009; (b) the Lock-Up Agreement
> demanded by McMillan on April 1, 2010 (which affirmed Nova's

---

[6] Nova further alleges that "[t]o the extent the September 25, 2006 written lease
assignment was 'missing,' as Sun River claimed, such document related only to the
880,000 shares issued by Sun River to Nova on September 25, 2006 *and was not*
necessary to approve of the other 320,000 Sun River shares previously issued by Sun
River to Nova in connection with the April 12, 2006 Assignment and the July 17, 2006
Promissory Note Extension." (*Id.* at 17.)

> ownership); (c) McMillan's September 13, 2010 threat to block
> transfer or sale of Nova's and Sharon K. Fowler's shares if they did
> not immediately 'get out of the market' (which again affirmed Nova's
> ownership); and (d) Sun River's continued affirmation in its SEC
> filings . . . that Nova was a shareholder 'known by the Company
> [Sun River] to own beneficially 5% or more of the outstanding
> shares of the Common Stock.'

(*Id.* at 17-18.) Nova also asserts that Sun River knew its statement—that Nova

had disclaimed ownership of the shares in 2008—was false because, as part of

the September 25, 2006 Asset Purchase Agreement, "the parties had expressly

agreed . . . that the shares issued were 'non-refundable.'" (*Id.* at 18.)

Nova asserts, [u]pon information and belief," that McMillan instructed

Pennington, on behalf of Sun River, "to falsely report on March 1, 2011 that Mr.

Fowler, on behalf of Nova, had said at the time of the Note Release that Nova

'did not wish to keep the shares.'" (*Id.*) Nova states that "[s]uch information and

belief is based upon the fact that Mr. Fowler, Mr. McMillan[,] and Wesley Whiting[7]

were the only persons who negotiated the Note Release." (*Id.*) Nova further

asserts that "McMillan's false statements through Mr. Pennington on or about

March 1, 2011[,] were pretext and made in order to carry out McMillan's earlier

threats to Mr. Fowler on September 13, 2010[,] that he and Sun River would

block any attempted transfer or sale of Nova's shares thereafter." (*Id.*)

With regard to the January 31, 2011 stop/hold instruction to Mountain

Share, Nova contends Sun River knew its statement that "it could not approve

the transfer requested by Nova because such transfer would not be 'rightful,'"

was false and misleading because:

---

[7] According to Nova, Whiting retired from Sun River in April 2008 and has "had no involvement with Sun River" since then. (*Id.*)

9

> (a) according to Mr. Pennington, the only basis for Sun River's belief or opinion that such transfer was not 'rightful' was that Sun River was 'missing documentation' necessary to approve the transfer, plus Mr. Fowler's supposed statement at the time of the Note Release that Nova 'did not wish to keep' the 1,200,000 shares previously issued; (b) . . . Sun River had all documentation necessary to approve all or a portion of the transfer requested by Nova; (c) . . . Sun River knew that Nova continued to beneficially own all 1,200,000 Sun River shares after the Note Release, as it had expressly and continually affirmed thereafter.

(*Id.* at 18-19.) Accordingly, Nova alleges that, "[b]ased on such facts known to it, Sun River did not genuinely believe that the transfer requested by Nova was not 'rightful,' nor was there a reasonable factual basis for such belief." (*Id.* at 19.)

Nova further asserts that "Sun River has continued to affirm through its periodic SEC filings that Nova is a shareholder 'known by the company' to beneficially own 1,200,000 shares of Sun River stock." (*Id.*) Nova claims to have "reviewed such filings and relied upon the same at all times." (*Id.*) Nova also claims that, "[i]n connection with [its] request to [Mountain Share] for registration of its shares in the name of Alpine or its nominee, and in order to sell such shares through its broker Alpine, [it] relied upon Sun River's false and misleading statements and non-disclosures" by, among other things:

> (a) delaying or refraining from the transfer or sale of its shares to potential buyers between March 19, 2009, when Nova received unrestricted certificates for its 1,200,000 shares, and March 1, 2011[,] when Sun River claimed for the first time that Nova did not own the shares; (b) instructing Alpine to re-supply Sun River with any documentation that it claimed was missing, so that its transfer request could be approved; and (c) reporting to owners, investors[,] and others its 1,200,000 Sun River shares as assets of the company.

(*Id.* at 19-20.)

As to damages, Nova asserts that, *because of Sun River's actions*, it "has been unable to sell or transfer its 1,200,000 shares on the open market – exactly as Mr. McMillan threatened on September 13, 2010." (*Id.* at 20.) It further alleges that "Sun River's actions have caused injury to Nova in excess of $5,000,000 as a result of Nova's inability to sell its shares on the open market." (*Id.*)

## B.   PROCEDURAL HISTORY

On March 18, 2011, Nova filed this action, at the time against only Sun River and Mountain Share. (*See* Doc. # 1.) Sun River filed a Motion to Dismiss (Doc. # 11), which was mooted (*see* Doc. # 24) by the filing of Nova's Amended Complaint (Doc. # 22). Sun River's second Motion to Dismiss (Doc. # 27) was similarly mooted (*see* Doc. # 104) by Nova's Second Amended Complaint (Doc. # 54), which Nova filed with the Court's permission (*see* Doc. # 53) on July 29, 2011.[8] Against Sun River, Nova has asserted claims for: (1) securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); (2) violation of the Colorado Securities Act (securities fraud and aiding and abetting securities fraud) pursuant to Colo. Rev. Stat. § 11-51-101, *et seq.*; (3) civil theft under Colo. Rev. Stat. § 18-4-401, *et seq.*; (4) violation of the Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-101, *et seq.*; (5) statutory injunctive relief under Colo. Rev. Stat. §§ 4-8-401 and 407; and (6) damages for violation of

---

[8] The Second Amended Complaint added claims against McMillan, Cicerone, and Brech. (*See* Doc. # 54.)

Colo. Rev. Stat. §§ 4-8-401 and 407, which Nova also asserted against Mountain Share.[9]

On August 12, 2011, Sun River filed its third Motion to Dismiss. (Doc. # 56.)  Nova responded on September 2, 2011 (Doc. # 61), and Sun River replied on September 16, 2011 (Doc. # 67).[10]

Before Nova filed its Seconded Amended Complaint (Doc. # 54), Mountain Share cross-claimed against Sun River for indemnification and contribution "for any act or omission" allegedly committed by Sun River (Doc. # 28).  Sun River moved to dismiss Mountain Share's Cross-Claim on June 2, 2011.  (Doc. # 40.) Mountain Share responded on June 27, 2011 (Doc. # 45), and Sun River replied on July 11, 2011 (Doc. # 49).

## II. DISCUSSION

The Court will address first Sun River's Motion to Dismiss Nova's Second Amended Complaint (Doc. # 56), because deciding that motion will also resolve Sun River's Motion to Dismiss Mountain Share's Cross-Claim (Doc. # 40), which is premised entirely on arguments asserted in the former motion.

## A.   MOTION TO DISMISS NOVA'S SECOND AMENDED COMPLAINT

Sun River argues that the court should dismiss this action because Nova failed as a matter of law to state a Rule 10b-5[11] claim and that, accordingly, the

---

[9] Nova also asserted claims 2, 3, and 4 against McMillan, Cicerone, and Brech. (See Doc. # 54.)

[10] On November 2, 2011, Nova submitted a "Supplement to Nova's Opposition to Motion to Dismiss Second Amended Complaint" (Doc. # 83), followed on March 22, 2012, by a "Second Supplement to Nova's Opposition to Motion to Dismiss Second Amended Complaint" (Doc. # 109).

Court lacks subject matter jurisdiction over the case.[12] The Court will address each argument, in turn, below.

1.    Whether Nova Stated a Rule 10b-5 Claim

     a)    *Standard of review*

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light

---

[11] Rule 10b-5 is coextensive with its statutory equivalent, 15 U.S.C. § 78j(b); as such, the Court will refer only to the former in this Order. *See S.E.C. v. Wolfson*, 539 F.3d 1249, 1256 n.11 (10th Cir. 2008).

[12] Sun River also asserts that the Court should stay this action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of an action it filed in Texas state court on March 10, 2011. (Doc. # 56 at 12-15.) However, in its March 22, 2012 supplement, Nova asserts, and attaches supporting documentation showing that Sun River voluntarily dismissed the Texas action by filing a "Notice of Non-Suit without Prejudice" on March 21, 2012. (*See* Docs ## 109 and 109-1.) As such, Sun River's argument for the Court to exercise *Colorado River* abstention is now moot.

most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

In order to state a Rule 10b-5[13] claim for securities fraud, a plaintiff must plead that:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with *scienter*, that is, with the intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

A Plaintiff suing under Rule 10b-5 must comply with the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act

---

[13] Rule 10b-5 states:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b-5.

of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (codified as amended in scattered sections of Title 15 of the United States Code).  Rule 9(b) mandates that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, where, and how of the alleged fraud[,] and must set forth the time, place, and contents of the false representation, and the identity of the party making the false statements." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (quotation marks and citations omitted).  However, "[t]he requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be simple, concise, and direct, and to be construed as to do substantial justice." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotation marks, citation, and lacuna omitted).

The PSLRA similarly requires that the complaint in a securities fraud action under Rule 10b-5 "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is made." 15 U.S.C. § 78u-4(b)(1).  When alleging that a defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  Thus, a plaintiff suing under Rule 10b-5 must plead with particularity the

defendant's fraudulent acts and the defendant's state of mind. *See Adams*, 340 F.3d at 1095-96. Nonetheless, although the PSLRA imposes substantial specificity requirements for a Rule 10b-5 claim, "the statute should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002) (quotation marks and citations omitted). Also, similar to Rule 9(b), the PSLRA did not "abolish the concept of notice pleading." *Adams*, 340 F.3d at 1101 (observing that the "PSLRA did not . . . purport to move up the trial to the pleadings stage").

   b)    Analysis

   Sun River argues that Nova failed to properly plead every element of a Rule 10b-5 claim. Accordingly, the Court will address separately all five elements.

   (i)    *Pleading the misleading statements with specificity*

   To state a valid Rule 10b-5 claim, a plaintiff must first plead that the defendant made an untrue or misleading statement of material fact or failed to state a material fact necessary to make statements not misleading. *Adams*, 340 F.3d at 1095. A plaintiff must "specify each statement alleged to have been misleading [and] the . . . reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1). "A common-sense, case-by-case approach will edify any determination of whether the facts alleged are sufficient under this standard, requiring courts to determine whether, taken as a whole, the facts alleged support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Corporate Stock Transfer, Inc. v. AE Biofuels,*

*Inc.*, 663 F. Supp. 2d 1056, 1066 (D. Colo. 2009) (quotation marks and citations omitted). The Court will first consider whether Nova alleged with particularity that Sun River made misleading statements and will then consider whether Nova has specified the reasons why such statements were misleading.

Nova asserts, and the Court agrees, that it alleged with particularity several misleading statements (or failures to state material facts) by Sun River, including:

- "Sun River's statement that it was 'missing documentation' necessary to approve the registration of Nova's 1,200,000 shares into the street name of Nova's broker . . . ."

- "Sun River's statement that Nova had agreed in 2008 that it 'did not wish to keep' the 1,200,000 shares and would transfer the shares back to Sun River."

- "Sun River's statement in its January 31, 2011 stop/hold instruction that registration of Nova's 1,200,000 shares into the name of Nova's broker would not be 'rightful.'"

- "Sun River's failure to disclose, in connection with its periodic filings with the SEC in 2008 and thereafter, that Sun River was asserting beneficial ownership of the 1,200,000 shares previously issued to Nova."

(Doc. # 61 at 4-5.) These allegations are each accompanied by identification of who made the statement, what the statement consisted of, when and where the statement was made, and the manner in which it was conveyed.

Moreover, to the extent that some of these statements are supported by allegations made "upon information and belief," the Court finds that Nova has complied with the PSLRA's mandate to "state with particularity all facts on which [such] belief is made." 15 U.S.C. § 78u-4(b)(1). For instance, Nova alleges, "[u]pon information and belief" that, on behalf of Sun River, McMillan instructed Pennington to report on March 1, 2011, that Nova had said at the time of the April 21, 2008 Note Release that it did not wish to keep its 1,200,000 Sun River shares. (Doc. # 54 at 18.) But Nova specified that such belief was based on the Note Release having been negotiated with only two Sun River employees, including McMillan, and that the other employee left Sun River long before March 1, 2011. (See id.)

The Court further finds that Nova has specified the reasons why Sun River's alleged statements were misleading. These reasons are recited in great detail in the "Background" section above and, therefore, will not be repeated here except for the following example. Regarding Sun River's statement that Nova said in 2008 it did not want to keep its Sun River shares, Nova asserted such statement was misleading because: "Sun River and McMillan, who negotiated the April 21, 2008 Note Release on behalf of Sun River, expressly and continually affirmed Nova's ownership of all 1,200,000 shares after the April 21, 2008 Note Release . . . ." (Id. at 17.) Nova detailed those affirmations, highlighting; (1) Sun River's "issuance of new, unrestricted certificates to Nova on March 19, 2009"; (2) the April 1, 2010 "Lock-Up Agreement demanded by McMillan"; (3) "McMillan's September 13, 2010 threat to block transfer or sale of Nova's . . .

18

shares"; and (4) Sun River's SEC filings, which stated "that Nova was a shareholder 'known by the Company [Sun River] to own beneficially 5% or more of the outstanding shares . . . .'" (*Id.* at 17-18.)

Accordingly, the Court finds that Nova has plead with specificity Sun River's allegedly misleading statements.

### (ii)   *In connection with a purchase or sale of securities*

The second Rule 10b-5 element a plaintiff must plead is that the defendant's misleading statements were made "in connection with the purchase or sale of securities." *Adams*, 340 F.3d at 1095. The Supreme Court has stated that courts should afford this element a "broad reading." *Zandford*, 535 U.S. at 819; *see also S.E.C. v. Wolfson*, 539 F.3d 1249, 1262 (10th Cir. 2008) ("The Supreme Court has consistently embraced an expansive reading of § 10(b)'s 'in connection with' requirement."). In fact, the Supreme Court has recognized that "it is enough that the fraud alleged 'coincide' with a securities transaction." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Further, in *Ajjarapu v. AE v. Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1168 (D. Colo. 2010), this Court cited with approval *S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 244 (4th Cir. 2009), for the proposition that a statement is "in connection with" a sale of securities if "the parties' relationship was such that it would necessarily involve trading in securities."

In *Ajjarapu*, the stockholder plaintiffs alleged that, when their brokerage firm contacted the defendant corporation's stock transfer agent and requested the removal of a restrictive legend from their stock certificates, the defendant

directed its transfer agent on "bogus grounds" not to remove the legend, in an attempt to prevent the plaintiffs from selling their stock. 728 F. Supp. 2d at 1158-59. This Court held that the plaintiffs adequately pled that the defendant made misleading statements in connection with a sale of securities. *Id.* at 1168. It reasoned that, based on the plaintiffs' allegation that "the receipt of unrestricted shares is a condition of sale for securities, a request to remove a restrictive legend is made in connection with the sale of a security." *Id.* It also stated that such a request "necessarily involves trading in securities," because the plaintiffs' brokerage firm had to contact the defendant's transfer agent, and "the business of a brokerage firm is the sale of securities." *Id.* at 1168-69. Despite Sun River's arguments to the contrary, the Court sees its analysis in *Ajjarapu* as applicable here.

Nova alleges that Alpine, its brokerage firm, contacted Mountain Share, Sun River's stock transfer agent, and requested that Nova's Sun River stock certificates be registered in street name, at which point Sun River made substantially false and misleading statements to Mountain Share in an attempt to preclude Nova from selling its shares. Moreover, Nova alleges that registration in street name "was necessary for Alpine, as broker, to sell Nova's . . . Sun River shares on the open market." (Doc. # 54 at 14.) Accordingly, based on Nova's allegation that registration of its stock in street name was necessary for Alpine to have sold it, its request to have the stock so registered was made in connection with the sale of securities.[14] Further, similar to the brokerage firm in *Ajjarapu*,

---

[14] Sun River asserts that Nova's reliance on *Ajjarapu* is misplaced because "the removal of restrictive legends . . . is an entirely separate concept from registering stock

Alpine had to contact Mountain Share to have Sun River approve Nova's transfer request and register the stock in street name. Alpine is in the business of securities' sales; thus, the transfer request it presented to Mountain Share necessarily involved the sale of securities. *See Ajjarapu*, 728 F. Supp. 2d at 1168-69.

Additionally, the Court rejects Sun River's assertion that this element of Rule 10b-5 hinges on "the initial sale of stock between the parties . . . ." (Doc. # 56 at 7.) As *Ajjarapu* makes clear, a stockholder plaintiff can satisfy the "in connection with" requirement of Rule 10b-5 by pleading that an issuer precluded a *later* sale of the plaintiff's stock. *See* 728 F. Supp. 2d at 1168-69. For a similar reason, the Court also rejects Sun River's argument that Nova fails to state a claim on this element because the statements it relies on did not "induce the purchase/sale." (Doc. # 56 at 7.) As stated above, and as *Ajjarapu* and other cases elucidate, Rule 10b-5's "in connection with" requirement is satisfied so long as "the fraud alleged 'coincide[s]' with a securities transaction," 728 F. Supp. 2d at 1168 (quoting *Dabit*, 547 U.S. at 85); such fraud need not "induce" the transaction.

Further, the Court is not persuaded by Sun River's assertion that "if misrepresentations or omissions are made which cause plaintiff to retain stock, rather than buy or sell stock, those representations or omissions are not

---

certificates in 'street name.'" (*Doc.* # 67 at 5 (emphasis deleted).) For example, it argues, "such registration is not a prerequisite to any sale." (Doc. # 56 at 7 n.2.) Although Sun River might be correct, neither party provides controlling authority, nor is the Court aware of any, addressing the issue of street-name registration of stock in the context of Rule 10b-5. As such, Nova's allegations suffice for purposes of defeating Sun River's motion to dismiss.

actionable under section 10(b) and Rule 10b-5." (Doc. # 56 at 8.)  Sun River's

lone citation to *Rich v. Touche Ross & Co.*, 415 F. Supp. 95, 100 (S.D.N.Y. 1976),

in support of its assertion is misplaced, for several reasons.  First, Sun River

neglects to mention that *Rich* has been abrogated, as recognized by *Gambella v.*

*Guardian Investor Services Corp.*, 75 F. Supp. 2d 297 (S.D.N.Y 1999).  Second,

the *Rich* court acknowledged the viability of a theory, though not applicable to the

circumstances presented in that case, in which plaintiffs allege that defendants

were aware of their "intention to sell their shares" but the plaintiffs were

"specifically induced thereafter by a fraudulent scheme to retain their shares."

415 F. Supp. at 100.  Third, *Rich* relied on *Blue Chip Stamps v. Manor Drug*

*Stores*, 421 U.S. 723 (1975).  As *Ajjarapu* points out, "recent Supreme Court

cases have rejected this view [that there must be an actual purchase or sale of a

security] and afforded this element a broader construction."  728 F.2d at 1168

n.13 (citing *Dabit*, 547 U.S. at 84 (rejecting *Blue Chip Stamps*' narrow view of the

"in connection with" element)).

Accordingly, the Court finds that Nova adequately pled that Sun River's

allegedly misleading statements were made in connection with the sale of

securities.

### (iii)   *Pleading scienter with specificity*

The third Rule 10b-5 element, which must be pled, is that the defendant

acted with *scienter*—that is, with intent to defraud or with recklessness.  *Adams*,

340 F.3d at 1095.  A plaintiff must plead with particularity facts that give rise to a

"strong inference" that the defendant acted with *scienter*.  15 U.S.C. § 78u-

4(b)(2). Such an inference of *scienter* is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." *Adams*, 340 F.3d at 1105.

Nova asserts, and the Court agrees, that it has pled "with great specificity facts showing fraudulent intent, including the speakers, motive[,] and statements made which demonstrate *scienter*." (Doc. # 61 at 6 (emphasis added).) As just one example, regarding Sun River's alleged statement that it was "missing documentation" necessary to register Nova's Sun River shares in street name, Nova plead with particularity the following facts:

- "Sun River had all such documentation in paper or electronic form."

- "Sun River had previously determined that it had all necessary documentation in order to issue the new, unrestricted certificates to . . . Nova."

- "Sun River had publicly filed such documentation with the SEC on or about May 3, 2006[,] October 13, 2006[,] and November 21, 2006."

- "[T]he only documentation that Sun River could identify as 'missing' and needed to approve Nova's transfer request for its 1,200,000 shares was a written assignment of the oil and gas leases conveyed by Nova to Sun River as a part of the September 25, 2006 Assignment."

(Doc. # 61 at 6-7.) These facts, assumed as true, would convince a reasonable person that Sun River acted with intent to defraud or, at least, with recklessness.

Similarly, Nova has asserted many other specific factual allegations, from which a strong inference of *scienter* can be drawn.[15]

(iv)   <u>Reliance</u>

The fourth element a plaintiff must plead to obtain relief in a Rule 10b-5 action is that the plaintiff "relied on the misleading statements." *Adams*, 340 F.3d at 1095. "Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). However, as the Supreme Court noted in *Levinson*, there is "more than one way to demonstrate the causal connection." *Id.* In the instant case, the Court finds that Nova has pled facts sufficient for it to proceed under the presumption of reliance used in *Shclick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975), *overruled on other grounds by Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991).

The Court agrees with Nova's assertion that, for purposes of Rule 12(b)(6), it "meets the reliance element of a 10b-5 claim" by alleging that Sun River's misrepresentations and omissions "were collateral to a larger fraudulent scheme." (Doc. # 61 at 9.) *See Alter v. DBLKM, Inc.*, 840 F. Supp. 799, 806 (D. Colo. 1993) (*Schlick* "obviates the need to prove reliance when defendants' misrepresentations or omissions are collateral to a larger fraudulent scheme.") In the instant case, Nova alleges such a scheme. For example, it alleges that "Sun

---

[15] The Court rejects Sun River's assertion that the Court should refuse to draw inferences favorable to Nova because doing so "would allow [Nova] to make allegations on information and belief without satisfying the particularity requirements." (Doc. # 67 at 3 (quotation marks and citation omitted).) Nova has satisfied the particularity requirements; thus, its supporting allegations, made "upon information and belief," do not contravene the PSLRA or Tenth Circuit precedent.

24

River's and McMillan's actions are part of an ongoing scheme to block the

transfer and sale of Sun River shares by other stockholders, all in order to

artificially inflate the price of Sun River's shares for their own pecuniary benefit."

(Doc. # 54 at 3.) It also alleges that "Sun River knowingly conducted or

participated, directly or indirectly, in an enterprise . . . to obstruct or prevent sales

of Sun River stock by shareholders other than Sun River's management,

McMillan, Brech[,] and Cicerone." (*Id.* at 28.) Therefore, the Court rejects Sun

River's assertion that "no allegations exist to support a larger fraudulent scheme

. . . ." (Doc. # 67 at 9.) If Sun River means that Nova has failed to plead facts in

support of its allegations, the Court disagrees. The Court considers Nova's

allegation—that Sun River, though McMillan, demanded that Sharon K. Fowler

refrain from selling her stock and enter into a "Lock-Up Agreement" (Doc. # 54 at

10-11)—to be just one relevant example. Moreover, based on such factual

allegations, dismissal at this stage, prior to Nova having the opportunity to

conduct discovery to develop fully the allegations it has sufficiently pled, would

be premature.[16]

(v)   <u>Damages</u>

The fifth, and final, Rule 10b-5 element that a plaintiff must plead is

"damages as a result of . . . reliance" on the defendant's misleading statements.

*Adams*, 340 F.3d at 1095. Here, Nova satisfies this element by pleading that it

"has been unable to sell or transfer its 1,200,000 shares on the open market" and

---

[16] The Court is also not persuaded by Sun River's assertion that Nova has not sufficiently pled reliance because the statements it relies on occurred after Nova obtained its Sun River shares. (*See* Doc. # 56 at 9.) As indicated previously, a plaintiff can state a valid Rule 10b-5 claim by pleading that a stock issuer precluded it from completing a subsequent sale of the stock. *See Ajjarapu*, 728 F. Supp. 2d at 1168-70.

25

that "Sun River's actions have caused injury to Nova in excess of $5,000,000 as a result of Nova's inability to sell its shares . . . ." (Doc. # 54 at 20.)  Neither of Sun River's arguments on this element are compelling.

Sun River argues that "[b]ecause Nova is not the rightful owner of the Sun River shares, it cannot be injured by an inability to sell those shares[,]" and that "Nova retained the $1.1 million paid by Sun River, although Nova deprived Sun River of the benefits which should have been conferred to it under the [Asset Purchase Agreements]." (Doc. # 56 at 10.)  However, for purposes of this Order, the Court must accept Nova's well-pled factual allegations as true.  As such, Nova is the rightful owner of the Sun River shares and did not deprive Sun River of any benefits under the Asset Purchase Agreements.  Sun River's assertions to the contrary appear to present what courts commonly refer to as "disputed issues of material fact," the resolution of which falls within the trier of fact's province.[17] *See, e.g., Fin. Indus. Fund, Inc. v. McDonnell Douglas Corp.*, 315 F. Supp. 42 (D. Colo. 1970).

Accordingly, the Court finds that, because Nova has adequately pled all five elements of its Rule 10b-5 claim, it has stated a federal securities fraud claim against Sun River.[18]

---

[17] These assertions only "appear" to present such a dispute because, at this point in the litigation, Sun River has not supported them with any evidence. *See, e.g., Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (disputes of material fact are "genuine" only if supported by "facts such that a reasonable jury could find" for either party).

[18] Sun River does not distinguish Nova's Rule 10b-5 claim from its claim pursuant to the Colorado Securities Act, Colo. Rev. Stat. § 11-51-101, *et seq.* In fact, Sun River encourages the Court to analyze them concurrently. (*See* Doc. # 56 at 4 & n.1.)  As such, and because "federal and [Colorado] state law concerning unlawful practices in connection with the purchase or sale of securities are quite parallel," *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 926 (10th Cir. 1992), the Court finds that Nova has

2.    Whether the Court has Subject Matter Jurisdiction

Because Nova has validly stated a claim under federal law, the Court's subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction) for Nova's state-law claims.

**B.    MOTION TO DISMISS MOUNTAIN SHARE'S CROSS-CLAIM**

Mountain Share's Cross-Claim asserts that "[t]his Court has ancillary jurisdiction[19] over [Mountain Share's] cross-claim because [its] cross-claim is related in its entirety to the principal case involving Nova . . . Sun River[,] and [Mountain Share]." (Doc. # 28 at 9.)  Sun River responds that, because "this Court lacks subject matter jurisdiction over the principal case[,]" Mountain Share "has failed to establish subject matter jurisdiction for its Cross Claim."  (Doc. # 40 at 3.)  However, the Court has found that it has subject matter jurisdiction over the "principal case," and therefore jurisdiction over Mountain Share's cross-claim is also proper because it is so related to the claims at issue in the "principal case" as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

---

also validly stated a securities fraud claim under state law.  *See also Huffman v. Westmoreland Coal Co.*, 205 P.3d 501 (Colo. App. 2009).

[19] "Ancillary jurisdiction is an 'ill-defined concept' that permits jurisdiction over certain cross-claims, counter-claims and third-party claims that are related to the principal case but do not enjoy a separate basis for subject matter jurisdiction." *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1215-16 (10th Cir. 1992) (citation omitted). "Ancillary jurisdiction" is now referred to as "supplemental jurisdiction" under 28 U.S.C. § 1367(a). *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1034 n.2 (10th Cir. 2004); *see also Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 579 (2005).

## III. **CONCLUSION**

For the foregoing reasons, Sun River's Motion to Dismiss Nova's Second Amended Complaint (Doc. # 56), and Sun River's Motion to Dismiss Mountain Share's Cross-Claim (Doc. # 40) are DENIED.

DATED:  March 28, 2012

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Court Judge